FILED
DEC 4 2014
DEC - 4 2014
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **14 CR 704** |
| vs. | ) ) ) ) | Violation: Title 18, United States Code, Section 1832(a) |
| DAVID JACOB NEWMAN | ) | |

JUDGE DARRAH

MAGISTRATE JUDGE MASON

## COUNT ONE

The SPECIAL JULY 2013 GRAND JURY charges:

1. At times material to this indictment:

    a. Defendant DAVID JACOB NEWMAN was employed by Trading Firm from July 2004 through March 2014, first as a trading clerk and then as a trader.

    b. Trading Firm was a proprietary trading firm located in Chicago, Illinois. Trading Firm specialized in electronic trading of futures, options, and equities, and in software development, and traded on national futures exchanges located both inside and outside Illinois. Trading Firm held itself out as a firm that, in order to remain competitive in the high-speed trading environment, had "invested in state-of-the-art infrastructure and hardware, developed next-generation trading tools for the global electronic markets, and remained at the leading edge of rapidly changing technological advancements."

    c. Trading Firm traders, software developers, and other employees created and modified computer code for electronic trading and strategies, and created other intellectual property, which were the firm's trade secrets. Trading

Firm did not make its trade secrets publicly available, and the trade secrets derived independent economic value from not being generally known or available to the public. These trade secrets included custom-made software for pricing financial products, communicating and executing trades on public exchanges, and analyzing trading risk. The trade secrets also included trading algorithms, trading profit and loss analysis, and Trading Firm's options modeling system. Most of Trading Firm's computer code used for trading was custom-made by its employees or consultants. Trading Firm spent considerable time and money developing this computer code, and other intellectual property.

    d. Trading Firm took reasonable measures to keep its proprietary information secret.

      i. Trading Firm had an employee handbook with a section called "Information Systems and Social Media Policy." The handbook stated: (1) "All computers, computer system networks . . . and all communications and information transmitted, received or stored on Trading Firm's information systems are Trading Firm's property;" (2) "Trading Firm computers are to be used solely for Trading Firm business;" (3) ". . . nor may an employee access any computer files other than those that the employee has a right and need to access;" and (4) "Employees shall not use Trading Firm's information and electronic communications system to access, distribute or publish any of its trade secrets or proprietary information without the express approval of an authorized representative of

management." On or about December 8, 2011, NEWMAN signed a document acknowledging that he received, reviewed, and understood the policies contained in the employee handbook.

      ii.    Each time a Trading Firm employee logged into its computer system, the employee would be met by the following message:

> This system is restricted solely to Trading Firm authorized users for legitimate business purposes only. The actual or attempted unauthorized access, use or modification of this system is strictly prohibited by Trading Firm. Unauthorized users are subject to company disciplinary proceedings and/or criminal and civil penalties under state, federal or other applicable domestic and foreign laws. The use of this system may be monitored and recorded for administrative and security reasons. Anyone accessing this system expressly consents to such monitoring and is advised that if such monitoring reveals possible evidence of criminal action Trading Firm may provide the evidence of such activity to law enforcement officials. All users must comply with Trading Firm Corporate Security Instructions regarding the protection of Trading Firm information assets.

      iii.    Trading Firm's office was not open to the public. Visitors were required to be escorted while in the office. Trading Firm employees could not enter its office without swiping an individually-assigned access card to unlock exterior doors. Video surveillance cameras were installed in the ceiling at several locations inside Trading Firm's office. To log into Trading Firm's computer system, each employee was required to use a unique password.

    e.    On or about October 31, 2013, NEWMAN accessed and copied computer files from Directory A onto a personal thumb drive. Directory A contained computer files consisting of trading algorithms, strategies, and analysis

3

created and used by Trader A, and by members of Trader A's team. The files were trade secrets, and NEWMAN had no ownership interest in them. Trading Firm did not authorize NEWMAN to copy or possess these trade secrets.

  f. On or about November 5, 2013, NEWMAN accessed and copied computer files from Directories A, B, C, and D onto a personal thumb drive. The directories contained computer files consisting of trading algorithms, strategies, and analysis created and used by Traders A, B, C, and D. The files were trade secrets, and NEWMAN had no ownership interest in them. Trading Firm did not authorize NEWMAN to copy or possess these trade secrets.

  g. On or about November 11, 2013, NEWMAN established NTF LLC as an Illinois limited liability company. NEWMAN was NTF LLC's sole owner, and only member.

  h. On or about February 24, 2014, NEWMAN accessed and copied more than 400,000 computer files from Trading Firm's source code repositories onto a personal thumb drive. The repositories contained Trading Firm's trade secrets, including its source code, configuration files, and executable programs. NEWMAN had no ownership interest in the computer files. Trading Firm did not authorize NEWMAN to copy or possess these trade secrets.

  i. On or about February 27, 2014, NEWMAN signed an agreement with CME Group establishing the terms under which NTF LLC would be allowed to establish its own interface with CME online trading platforms.

j.  On or about February 28, 2014, Trading Firm paid NEWMAN his 2013 bonus.

k.  On or about March 3, 2014, NEWMAN resigned from Trading Firm.

l.  On or about March 4, 2014, NEWMAN established an account at Advantage Futures LLC, in the name of NTF LLC, for the purpose of trading speculatively in the futures markets. NEWMAN identified himself in the account opening documents as NTF LLC's managing member.

2.  On or about October 31, 2013, at Chicago, in the Northern District of Illinois, Eastern Division,

DAVID JACOB NEWMAN,

defendant herein, with intent to convert a trade secret to the economic benefit of someone other than the owner thereof, knowingly and without authorization did, and attempted to, copy, duplicate, and download, a trade secret belonging to Trading Firm, including a proprietary computer file used for pricing commodity futures contracts, such trade secret being related to a product or service used in or intended for use in interstate and foreign commerce, intending and knowing that the offense would injure Trading Firm;

In violation of Title 18, United States Code, Sections 1832(a)(2) and (a)(4).

## COUNT TWO

The SPECIAL JULY 2013 GRAND JURY further charges:

1. Paragraph 1 of Count One is incorporated here.

2. On or about November 5, 2013, in Chicago, in the Northern District of Illinois, Eastern Division,

DAVID JACOB NEWMAN,

defendant herein, with intent to convert a trade secret to the economic benefit of someone other than the owner thereof, knowingly and without authorization did, and attempted to, copy, duplicate, and download a trade secret belonging to Trading Firm, including a proprietary computer file used for pricing commodity futures contracts, such trade secret being related to a product or service used in or intended for use in interstate and foreign commerce, intending and knowing that the offense would injure Trading Firm;

In violation of Title 18, United States Code, Sections 1832(a)(2) and (a)(4).

## COUNT THREE

The SPECIAL JULY 2013 GRAND JURY further charges:

1. Paragraph 1 of Count One is incorporated here.

2. On or about February 24, 2014, in Chicago, in the Northern District of Illinois, Eastern Division,

DAVID JACOB NEWMAN,

defendant herein, with intent to convert a trade secret to the economic benefit of someone other than the owner thereof, knowingly and without authorization did, and attempted to, copy, duplicate, and download a trade secret belonging to Trading Firm, including a proprietary computer file constituting part of Trading Firm's "PriceNinja" software, such trade secret being related to a product or service used in or intended for use in interstate or foreign commerce, intending and knowing that the offense would injure Trading Firm;

In violation of Title 18, United States Code, Sections 1832(a)(2) and (a)(4).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY